**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

**IN RE:**

| | |
|---|---|
| **BRYAN HENDERSON** | |
| **NINA HENDERSON** | **CASE NO. 09-50596** |
| | |
| **DEBTOR(S)** | |
| | |
| **BRYAN HENDERSON and** | **PLAINTIFFS** |
| **NINA HENDERSON** | |
| | |
| **VS.** | **ADV. NO. 09-5114** |
| | |
| **AUTO BARN ATLANTA, INC., et al.** | **DEFENDANTS/THIRD PARTY PLAINTIFFS** |
| | |
| **VS.** | |
| | |
| **IMPERIAL RECOVERY AGENCY, INC., et al.** | **THIRD PARTY DEFENDANTS** |

**MEMORANDUM OPINION**

The primary issue before the Court on the parties' cross-motions for summary judgment is whether the Defendant Paul Lu and AutoBarn Atlanta Inc. (hereinafter collectively "AutoBarn") repeatedly and willfully violated the automatic stay as set forth in 11 U.S.C. § 362(a), thus entitling the Plaintiffs/Debtors to damages pursuant to 11 U.S.C. § 362(k).  Also before the Court is the question of (i) whether the Third-Party Defendants, Imperial Recovery Agency, Inc., B. Jeffrey Queen, Ron Athey, and Deno Constantine (hereinafter collectively "Imperial") had authority from Defendant/Third-Party Plaintiff AutoBarn to repossess the Debtor's vehicle; and, if so, whether Imperial violated a fiduciary duty to AutoBarn during the course of that relationship and (ii) whether Imperial committed slander when it reported to the local police department, the Debtors, and the Debtors' counsel that AutoBarn authorized it to repossess the Debtors' vehicle.

While the undisputed facts warrant summary judgment in part in favor of the Debtors for AutoBarn's repeated willful violations of the automatic stay, genuine issues of material fact remain as to whether AutoBarn acted willfully in regards to the repossession of the Debtors' vehicle.  Furthermore, the claims raised by AutoBarn against Imperial in the third-party complaint may not be resolved by this Court because the Court lacks subject matter jurisdiction to adjudicate the third-party claims.

## Facts and Procedural History

While the parties have many factual disagreements, there are several material facts that are not in dispute.  On August 14, 2008, the Debtor Bryan Henderson purchased a 1999 Volkswagen Passat, Vin # WVWPD63B3XE430993 (the "Vehicle") from the Defendant AutoBarn.  AutoBarn is a car dealership owned by Paul Lu and located in Marietta, Georgia. Mr. Henderson agreed to pay $15,342.40 for the purchase of the Vehicle by making a $1,000 down payment and 96 bi-weekly payments of $149.40.  AutoBarn retained a security interest in the Vehicle.

Mr. Henderson made no installment payments after the payment made on December 9, 2008.  Mr. Henderson and his wife ultimately left Georgia and moved to Kentucky in late 2008 without providing AutoBarn with a forwarding address.

On March 4, 2009, the Hendersons jointly filed for Chapter 13 relief.  On March 5, 2009, Mr. Lu asked Alice Hwang, the Office Manager of AutoBarn, to search for two repossession agents in Lexington, Kentucky who could repossess the Vehicle for AutoBarn.  Ms. Hwang searched online through the American Recovery Association website for repossession agents in Lexington, Kentucky and ultimately contacted Third-Party Defendant Imperial.  Ms. Hwang filled out a standardized form available to her on American Recovery Association's website, including the information needed to repossess the Debtors' Vehicle.  The form provided a "Special Instructions" box, in which Ms. Hwang typed the following instruction: "Please give us your

charge structure. Thanks." The form also includes the following language, located immediately prior to the "submit" button:

> This is authorization to act as our agent to collect or repossess the above collateral. We agree to indemnify and hold Imperial Recovery Agency, Inc., harmless from and against any and all claims, damages, losses and actions including reasonably attorney fees resulting from and arising out of your efforts to collect and/or repossess claims, except, however, as such may be caused by or arise out of negligence or unauthorized acts on the part of you, your company, its officers, employees or its agents.
>
> This assignment is being forwarded to you through the AMERICAN RECOVERY ASSOCIATION'S automated assignment system on the Internet at website: http://www.repo.org.
>
> To Submit your work order, press this button:

Ms. Hwang filled out an identical form the same day for State-Wide Recovery, Inc., another repossession agency in Lexington, Kentucky. One day later, on March 6, 2009, Mr. Lu hired Excel Recovery, a repossession agency in Georgia, to repossess the Debtor's Vehicle on AutoBarn's behalf.

On March 8, 2009, agents of both Imperial and Excel Recovery attempted to repossess the Vehicle but no repossession occurred. One day later, on March 9, 2009, Mr. Lu received notice of the Debtors' bankruptcy proceeding from Todd Merriman, an agent of Georgia Recovery, through which Mr. Lu hired Excel Recovery. That same day, Mr. Lu also discussed the failed repossession with Ron Athey of Imperial, although statements made in that conversation are very much in dispute.

On April 6, 2009, a month after Mr. Lu received notice of the Debtors' bankruptcy, Paul Lu left a message on the Debtors' home phone answering machine stating the following:

> Hey Bryan Henderson, this is Paul from AutoBarn. I am very angry at you, you are a very bad person. You all bought a car from us, you default on a loan, you did not make any payments after you cancelled the insurance on the car...(inaudible)...you are in violation of security, you are hiding the car from us, you filed bankruptcy and you are not going to be able to keep any car worth more than $3,500, so please bring the car back to us, and make payments that you owe to us, if you don't do that, you know I'm just going to hire some lawyer, you will be put in jail, we have three persons in jail, I will not have problem putting you in jail, you need to think about Nina and the kids, I don't want

3

> to have to do that but you are a bad person and I'll do that just for you. I'm not going to call you back.

The message was discovered by Nina Henderson, who contacted her husband Bryan about the message. The next morning, on April 7, 2009, the Debtors discovered the Vehicle was not in their driveway and upon investigation were advised by the local police department that the Vehicle had been repossessed. The Debtors contacted their counsel and the Debtors' counsel contacted Paul Lu, who after receipt of a phone call from Imperial regarding the repossession, provided Imperial's name as the repossession agent. The Vehicle was returned later that morning.

On May 2, 2009, the Debtors received correspondence from Donald W. Blevins, Clerk of the Fayette County Clerk's Office, regarding the Debtors' attempt to obtain Kentucky title and registration on the Vehicle. The clerk's correspondence included a letter from AutoBarn dated April 30, 2009 and the original letter requesting the Vehicle's original title dated February 2, 2009. The February 2, 2009 correspondence from the Fayette County Clerk's Office requested that AutoBarn, as the lien holder of the Vehicle, forward the original title document to its offices for processing. The letter explained that the security interest "will be printed on the face of the Kentucky title" and notification of filing would be returned to AutoBarn. The Clerk's letter further stated "a Vehicle cannot be sold or transferred unless you release your lien in writing."

On April 30, 2009, in response to the Fayette County Clerk's request that for the original title document, Mr. Lu stated,

> AutoBarn Atlanta is the lien holder on the vehicle and would like to keep the title the way it is in the State of Georgia. Please do not grant title of this vehicle to any party including Mr. Henderson for any reason.

In its letter dated May 1, 2009, the Clerk told Mr. Henderson that in light of AutoBarn's response, "the only way other [sic] we are able to process your request for a Kentucky Title is with a copy of the Georgia title...Please contact your lien holder and see if at any way possible

4

you can at least get a copy of the Georgia title."

On July 8, 2009, Auto Barn filed a proof of claim in the Debtor's bankruptcy [POC #18-1]. On July 17, 2009, the Order Confirming the Chapter 13 Plan was entered, entitling Auto Barn to a secured claim of $6,500 at 4.25 percent interest.

On August 5, 2009, the Vehicle again disappeared from the Henderson's driveway. The whereabouts of the Vehicle and the circumstances of its disappearance are unknown.

On August 7, 2009, the Debtors received a certified letter from AutoBarn. The letter was titled "DEMAND IS HEREBY MADE FOR THE FOLLOWING ITEM: 99 VOLKSWAGON PASSAT VIN 3 WVWPD63BCXE430993." The letter further stated

> This item was purchased by you on 8/14/08, from AUTO BARN ATLANTA, located at 952 ROSWELL ST., MARIETTA, GA 30060, Cobb County. We have not received your payment which was due 12/04/08. Your insurance on this car was cancelled on 1/12/09.
>
> We need both you and the insurance company to provide proof of insurance which show the full coverage detail, effective date, insurance carrier's name, your policy number and the lost payee as Auto Barn Atlanta.
>
> If the proof of insurance for the above item is not tendered within five (5) days from receipt of this notice excluding Saturdays, Sundays and holidays, all information relating to these items may be submitted to the Magistrate for the issuance of a criminal warrant.

The letter indicated that the Debtors' counsel and the Cobb County Magistrate Court was copied as well.

On September 1, 2009, the Debtors filed this adversary proceeding against AutoBarn and Paul Lu seeking actual and punitive damages pursuant to 11 U.S.C. § 362(k) for multiple violations of the automatic stay. AutoBarn and Lu answered, vigorously denying these allegations. AutoBarn and Lu also subsequently filed a third-party complaint against Imperial, B. Jeffrey Queen, as President of Imperial, Ron Athey, as General Manager, and Deno Constantine, an employee of Imperial, alleging Imperial did not have authority from AutoBarn to repossess the Debtors' Vehicle on April 7, 2009 and is therefore liable to AutoBarn for any damages attributed to AutoBarn as a result. AutoBarn and Lu further alleged that, if Imperial is

found to be an agent of AutoBarn, it has breached its fiduciary duty by repossessing the vehicle in violation of the automatic stay and committed slander by informing the Lexington police department, the Debtors, and the Debtors' counsel that AutoBarn authorized it to repossess the Debtors' Vehicle. Imperial Recovery answered and denied Lu and AutoBarn's allegations.

Since the filing of this adversary, over 150 filings have been recorded in the record. This includes numerous motions to compel and motions for sanctions filed on behalf of AutoBarn and Mr. Lu. The pleadings have been voluminous and contentious. The matter is now before the Court on the parties' cross-motions for summary judgment.

**Analysis**

The Debtors argue that there is no genuine issue of material fact that AutoBarn violated the automatic stay at least four times since the filing of their bankruptcy. The Debtors seek summary judgment on liability with a separate hearing on the issue of damages. AutoBarn asserts it is entitled to summary judgment on not only the Debtors' claims against it for the stay violations, but also on its third party claims against Imperial. Imperial argues that it is entitled to summary judgment on AutoBarn's claims of breach of fiduciary duty and slander and that there is a genuine issue of material fact on the issue of whether Imperial was acting with authority from AutoBarn in repossessing the Debtors' Vehicle. Each of these issues is addressed below.

    **A.**    **Violation of the Automatic Stay**

The filing of a bankruptcy petition enjoins a creditor from taking certain actions to recover its debt from the debtor, thereby initiating a breathing spell for the debtor free from harassment, collection, and foreclosure. 11 U.S.C. § 362 states, in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title…, operates as a stay, applicable to all entities, of-
>
> (1) the commencement of continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement

of the case under this title;

....

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

....

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

Despite the mandate of section 362(a), some creditors have been known to intentionally run afoul of this injunction. In such a situation, a debtor who falls victim to a creditor's willful violation of the stay under section 362(a) may recover damages pursuant to 11 U.S.C. § 362(k). Section 362(k) provides:

[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages.

A debtor asserting that a creditor has willfully violated the automatic stay bears the burden of proving the intentional stay violation. *See TranSouth Financial Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (6th Cir. BAP 1999). To prevail, a debtor must prove (1) the actions taken violated the automatic stay; (2) the violator knew of the existence of the stay; and (3) the violator's actions were willful. *See Young v. Repine (In re Repine)*, 536 F.3d 512, 519 (5th Cir. 2008) (*citing In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005)). A "willful violation" does not require proof of a specific intent to violate the stay, but rather "an intentional violation by a party aware of the bankruptcy filing." *In re Sharon,* 234 B.R. at 687.

Based on the undisputed facts in the record, there can be no question that the Debtors have proven that AutoBarn repeatedly violated the automatic stay. Paul Lu admits that he had knowledge of the Debtors' bankruptcy by March 9, 2009. Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay. *See, e.g., In re Ozenne*, 337 B.R. 214, 220 (9th Cir. B.A.P. 2006). Following that date, it is undisputed that the following acts occurred:

(1) the April 6, 2009 voicemail message; (2) the April 7, 2009 repossession of the Debtors' Vehicle; (3) the April 30, 2009 letter refusing to provide the original certificate of title to the Fayette County Clerk's office; and (4) the August 7, 2009 letter demanding proof of insurance. The question then is whether these are "willful" acts that violate the stay.

### (1) The April 6, 2009 Message

11 U.S.C. § 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." This section is intended to prohibit creditor harassment of the debtor in attempting to collect pre-petition debts. This conduct can range from informal conduct, "such as by telephone contact or by dunning letters" to more formal judicial and administrative proceeds also prohibited by section 362(a)(1). 3 COLLIER ON BANKRUPTCY § 362.03[8][a] (Alan N. Resnick & Henry J. Sommer eds, 16th ed.).

There can be no doubt that Paul Lu, with knowledge of a debtor's bankruptcy filing, intended to leave Mr. Henderson a message demanding return of the Vehicle or criminal prosecution. This intentional act falls within the prohibitions of section 362(a)(6) and is a willful violation of the automatic stay.

### (2) The April 7, 2009 Repossession

There is no question that the repossession of a vehicle from a debtor when a creditor has knowledge of the debtor's bankruptcy amounts to a violation of the automatic stay. 11 U.S.C. § 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

The question of whether this is a "willful" violation, though, is not so clear. AutoBarn defends on the grounds that it did not authorize Imperial to repossess the Debtors' Vehicle. AutoBarn argues that it did not form a contract with Imperial by the mere completion of a standardized form, particularly where it included a request for a price structure. Furthermore, AutoBarn asserts that the day Mr. Lu discovered the Debtors had filed bankruptcy, he received

a phone call from Ron Athey of Imperial regarding the failed attempt to repossess the Vehicle. To Mr. Lu's recollection, he informed Mr. Athey that he never hired Imperial to repossess the Vehicle and that repossession was impossible because the Debtors had filed bankruptcy. Mr. Lu further contends that Imperial received knowledge of the Debtors' bankruptcy at the time of the failed repossession via Danny Lanyon of Excel Recovery. Imperial denies that either Danny Lanyon or Paul Lu informed Mr. Athey or any of its agents of the bankruptcy, but rather Mr. Lu reaffirmed that Imperial was hired to repossess the Vehicle and should continue its repossession efforts. Whether or not Mr. Lu/AutoBarn directed the repossession the Vehicle, despite their knowledge of the bankruptcy, is a genuine issue of material fact. Thus, summary judgment is inappropriate.

### (3)     The April 30, 2009 Letter

Paul Lu's attempt to thwart Mr. Henderson's request for the original certificate of title for the purpose of titling the Vehicle in Kentucky is a willful violation of the automatic stay pursuant to section 362(a)(3) as an intentional act to exercise control over property of the estate. The February 2, 2009 letter is clear that remitting the original certificate of title to the Fayette County Clerk's office would have no impact on AutoBarn's security interest. Thus, Paul Lu's letter can only be interpreted as harassment of the Debtor by refusal to cooperate with the Debtor's titling efforts, as well as an intentional effort to exercise control over the Vehicle, property of the Debtors' estate.

### (4)     The August 7, 2009 Letter

Finally, the August 7, 2009 letter demanding proof of insurance from the Debtors and threatening criminal prosecution for failure to comply is further evidence of harassment and a willful violation of the automatic stay pursuant to section 362(a)(3) and section 362(a)(6).

Thus, three of the four alleged stay violations were clear intentional acts taken by AutoBarn via Paul Lu with full knowledge of the bankruptcy and the automatic stay. The

9

Debtors are entitled, as a matter of law, to recover damages pursuant to 11 U.S.C. § 362(k)(1) for Mr. Lu/AutoBarn's (1) harassment via the April 6, 2009 voicemail message; (2) refusal to provide the original certificate of title to the Fayette County Clerk's office; and (3) demand for proof of insurance under threat of criminal prosecution.

Paul Lu and AutoBarn have argued that damages are an essential element to a claim for under section 362(k) and the Debtors are unable to prove actual damages, so their claims must fail. This is not correct. The mere violation of the automatic stay constitutes an injury. *See In re Preston*, 333 B.R. 346 (Bankr. M.D. N.C. 2005) (*citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. 174-175 (1977) stating that "[t]he automatic stay is one of the fundamental debtor...protections [giving] the debtor a breathing spell from all his creditors...[stopping] all collection efforts, all harassment, and all foreclosure actions.").

The undisputed facts show that Paul Lu and AutoBarn repeatedly violated the automatic stay by intentionally threatening and intimidating the Debtors and thwarting any efforts by the Debtors to title the Vehicle in Kentucky, despite knowledge of the Debtors' bankruptcy. The Debtors are therefore entitled to summary judgment as a matter of law for three of the four alleged stay violations.

**B.    The Third-Party Claims**

AutoBarn and Imperial have also moved for summary judgment on the third-party claims. AutoBarn alleges that Imperial did not have authority to act on behalf of AutoBarn in repossessing the Debtors' Vehicle because no contract was formed by the submission of the American Recovery Association's standardized form. Imperial claims that it had authority to act on AutoBarn's behalf, but has since argued in further briefing that there exists a genuine issue of material fact as to whether AutoBarn and Imperial had a contract that gave Imperial authority to act on AutoBarn's behalf. The Court may not decide these issues because it lacks subject matter jurisdiction.

The existence of subject matter jurisdiction may be raised at any time, by any party, or *sua sponte* by the Court. *Superior Bank, FSB, v. Boyd (In re Lewis)*, 398 F.3d 735, 739 (6th Cir. 2005). While this Court has subject matter jurisdiction to determine a cause of action for willful violation of the automatic stay, a claim that finds its genesis in the Bankruptcy Code, this jurisdiction does not extend to AutoBarn's third party complaint against Imperial wherein AutoBarn claims a right of indemnification, breach of fiduciary duty, and slander. *See Walker v. Cadle Company (In re Walker)*, 51 F.3d 562 (5th Cir. 1995). None of these claims arise under the Bankruptcy Code or federal common law. *Id. at* 366-367. Furthermore, the Court may not exercise "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) because the outcome of AutoBarn's third-party action against Imperial has no conceivable affect on the administration of the bankruptcy estate, as it does not alter the Debtors' rights, liabilities, options or freedom of action. *Id. at* 569.

Because the Court lacks subject matter jurisdiction over the claims raised by AutoBarn in its third-party complaint, the Court may not rule on the summary judgment motions that pertain to the third party complaint and the third-party complaint shall be dismissed for lack of jurisdiction.

**Conclusion**

The foregoing constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered accordingly.

Copies to:

Ryan R. Atkinson, Esq.

Robert W. Edler, Esq.

James Inman, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

***The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.***

**Signed By:**
***<u>Tracey N. Wise</u>***
**Bankruptcy Judge**
**Dated: Monday, February 07, 2011**
**(tnw)**
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~