**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**IN RE: BRYAN AND NINA HENDERSON**                  **CASE NO. 09-50596**

**DEBTORS**


**BRYAN AND NINA HENDERSON**                             **PLAINTIFF(S)**

**V.**                                    **ADVERSARY CASE NO. 09-5114**

**AUTO BARN ATLANTA, INC., et al.**                      **DEFENDANT(S)**


**MEMORANDUM OPINION**

On February 7, 2011, the Court entered its Memorandum Opinion [Doc. 155] granting in part and denying in part the Plaintiffs' Motion for Summary Judgment on the issue of whether the Defendants Paul Lu and Auto Barn Atlanta Inc. (hereinafter "Auto Barn") repeatedly and willfully violated the automatic stay as set forth in 11 U.S.C. §362(a), thus entitling the Plaintiffs to recover damages pursuant to §362(k).   The Court held that the Defendants willfully violated the stay via the following: (1) a threatening voicemail message left on the Debtor's answering machine on April 6, 2009; (2) a letter by Lu dated April 30, 2009 refusing to provide the original certificate of title to the Plaintiffs' 1999 Volkswagen Passat (the "Vehicle") to the Fayette County Clerk's office; and (3) a letter dated August 7, 2009, demanding proof of insurance and threatening criminal prosecution for failure to comply.   The Court also held that Mr. Lu and Auto Barn caused a violation of the automatic stay by setting into motion the events that led to the April 7, 2009, repossession of the Plaintiffs' Vehicle, but held that a genuine issue of material fact remained as to whether these actions were "willful" within the meaning of §362.

The only remaining issues to be determined are (1) whether Mr. Lu and Auto Barn's

1

actions that caused the April 7, 2009 repossession of the Plaintiffs' Vehicle are a "willful" violation of the stay for which damages are recoverable and (2) the type and amount of damages to which the Plaintiffs are entitled under §362(k) as a result of Mr. Lu and Auto Barn's repeated willful violations of the automatic stay.   After weighing the evidence and considering the testimony presented at an evidentiary hearing held on March 10-11, 2011, the Court holds that although the Defendants set into motion the repossession of the Plaintiffs' Vehicle, the evidence does not support a "willful" violation of the stay.   That said, while the repossession is not a willful violation of the stay, the record reflects repeated harassment by Mr. Lu and Auto Barn through three other willful violations of the stay for which actual and punitive damages are appropriate.

**Analysis**

At the hearing, the Court received the testimony of the following: (1) the parties, including the Plaintiffs Bryan and Nina Henderson and the Defendant Paul Lu; (2) representatives of Auto Barn, or Cindy Lu and Alice Hwang; (3) the employer of Bryan Henderson; (4) counsel for the Plaintiffs; and (5) counsel's paralegal.   While the Court will not reiterate the facts as cited in its Memorandum Opinion in granting in part and denying in part the Plaintiffs' Motion for Summary Judgment, it incorporates those facts by reference herein and addresses those facts as necessary below.

A.      **The April 7, 2009 Repossession**

The Plaintiffs argue that the Defendants committed a willful violation of the stay by authorizing the repossession of the Plaintiffs' Vehicle on April 7, 2009.   It is the Plaintiffs' position that by filling out a standardized form through the Auto Recovery Association's website, Lu and Auto Barn requested and authorized the repossession of the Plaintiffs' Vehicle by Imperial.   Mr. Lu and Auto Barn defend on the grounds that while Lu had knowledge of the automatic stay at the time of the repossession, he did not authorize the repossession of the

2

Vehicle by Imperial on Auto Barn's behalf and, in fact, specifically instructed Imperial that it had

no authority to effectuate any repossession on Mr. Lu or Auto Barn's behalf.

The evidence shows that on March 5, 2009, Ms. Hwang, the office manager at Auto

Barn, filled out a standardized form available to her on American Recovery Association's

website, including the information needed to repossess the Plaintiffs' Vehicle.   The form

provided a "Special Instructions" box, in which Ms. Hwang typed the following instruction:

"Please give us your charge structure.   Thanks."   The form also includes the following

language, located immediately prior to the "submit" button:

> This is authorization to act as our agent to collect or repossess the above collateral.
> We agree to indemnify and hold Imperial Recovery Agency, Inc., harmless from and
> against any and all claims, damages, losses and actions including reasonable attorney
> fees resulting from and arising out of your efforts to collect and/or repossess claims,
> except, however, as such may be caused by or arise out of negligence or unauthorized
> acts on the part of you, your company, its officers, employees or its agents.
>
> This assignment is being forwarded to you through the AMERICAN RECOVERY
> ASSOCIATION'S automated assignment system on the Internet at website:
> http://www.repo.org.

To Submit your work order, press this button:

Ms. Hwang filled out an identical form the same day for State-Wide Recovery, Inc., another

repossession agency in Lexington, Kentucky, and submitted both forms.   One day later, on

March 6, 2009, Mr. Lu, Auto Barn's President and Chief Executive Officer, hired Excel

Recovery, a repossession agency in Georgia, to repossess the Plaintiffs' Vehicle on Mr. Lu and

Auto Barn's behalf.

Despite submission of the form, Ms. Hwang and Mr. Lu testified that Imperial did not

respond to Auto Barn's request.   On March 8, 2009, agents of both Imperial and Excel

Recovery attempted to repossess the Vehicle but no repossession occurred.   One day later, on

March 9, 2009, Mr. Lu testified he received notice of the Plaintiffs' bankruptcy proceeding from

Todd Merriman, an agent of Georgia Recovery, through which Mr. Lu hired Excel Recovery.

3

Mr. Lu also testified that same day he discussed the failed repossession with Ron Athey of

Imperial.   According to Mr. Lu, he informed Mr. Athey that Auto Barn never hired Imperial to

repossess the Vehicle and Imperial cannot repossess the Vehicle because of the automatic

stay.   Despite this instruction, Imperial ultimately repossessed the Plaintiffs' Vehicle on April 7,

2009.

Mr. Lu's testimony that he instructed Mr. Athey that Imperial had no authority to

repossess the Plaintiffs' Vehicle on Auto Barn's behalf on March 9, 2009, the day Mr. Lu

received notice of the Plaintiffs' bankruptcy, is uncontested.   The Plaintiffs have presented no

witnesses from Imperial or otherwise to refute that this conversation occurred.   Ms. Hwang,

who was present in Auto Barn's office at the time the conversation with Mr. Athey occurred,

further corroborates Mr. Lu's testimony.   Because Mr. Lu informed Mr. Athey that Imperial had

no authority to repossess the Plaintiffs' Vehicle on Auto Barn's behalf and that Imperial could

not repossess the Vehicle in light of the automatic stay, the Defendants committed no willful

violation of the stay in violation of §362(k) with respect to the April 7, 2009 repossession.

### B.    Actual Damages

Although the Defendants committed no willful violation of the stay in the repossession of

the Vehicle, Mr. Lu and Auto Barn are responsible for three other willful violations of the stay.

As a result of these willful violations, the Plaintiffs are entitled to actual damages, including

costs and attorneys' fees.

Pursuant to §362(k)(1),

[A]n individual injured by any willful violation of a stay provided by this section shall
recover actual damages, including costs and attorneys' fees, and, in appropriate
circumstances, may recover punitive damages.

On a finding of a willful violation of the stay, the language of §362(k)(1) *requires* recovery of

actual damages, inclusive of costs and attorneys' fees.

Notwithstanding the absence of the word "reasonable" in §362(k), courts making fee

4

awards under this section apply a reasonableness standard.   *See In re Grine*, 439 B.R. 461, 472 (N.D. Ohio 2010) (*citing Eskanow & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 11 (9th Cir. B.A.P. 2002)).   To determine reasonableness of attorneys'' fees, the Sixth Circuit typically uses the "lodestar" method, or the multiplication of the reasonable number of hours billed by a reasonable billing rate.   *Id.* at 472.   The court then considers other factors that may be relevant to adjust the award up or down to achieve a reasonable result.   *Id.*   These factors include (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service property; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.   *Id.* at n.4.   The fee applicant is charged with submitting evidence to support the hours worked and the rates claimed.   *Id.* at 473.

At the time of trial, the Plaintiffs claimed as actual damages $250 in lost wages incurred by Mr. Henderson as a result of the April 7, 2009, repossession, as well as $35,992.50 in attorneys' fees attributable to the filing and prosecution of this adversary proceeding.   At the hearing, the Plaintiffs conceded that no lost wages were suffered as Mr. Henderson made up his missed work hours as a result of the repossession.   Proof of attorneys' fees was presented in the form of testimony and itemized bills of Ryan Atkinson, the Plaintiffs' bankruptcy counsel, and Scott Crosbie, co-counsel also hired by the Plaintiffs.   Mr. Atkinson testified that his rate is $250.00 an hour and he expended a total of 104.4 hours in prosecuting this adversary for a total fee of $26,600.00 as of February 28, 2011.   Mr. Crosbie testified that his rate is $275.00 an hour and he expended a total of 33.90 hours in prosecuting this adversary for a total fee of

$9,322.50 as of February 28, 2011.   Mr. Crosbie also testified that he anticipated spending an additional 15 hours in preparation for the evidentiary hearing for an additional sum of $4,125.00.

The Defendants make several arguments attacking the reasonableness of the fees incurred by the Plaintiffs.   First, the Defendants argue that the hourly rates of $250.00 and $275.00 are excessive, particularly because they are incurred by two attorneys rather than one. Second, the Defendants take issue with the time spent by counsel in prosecuting this adversary. Mr. Lu and Auto Barn argue that the adversary proceeding is unnecessary and was avoidable.   The Defendants also argue that any attorneys' fees incurred after a reasonable settlement offer is made may not be recovered.   Finally, Mr. Lu and Auto Barn argue that attorneys' fees are not recoverable where no other damages are incurred as a result of the stay violations.   The Court will address each argument in turn.

(1)    **Hourly Rate**

In determining the reasonableness of the hourly rate, the court considers the prevailing rate in the relevant market, or the rate that is customarily paid in the community to attorneys of reasonable skill, experience and reputation.   *In re Grine,* 439 B.R. at 474.   In determining the reasonable rate, the court may consider "a party's submissions, awards in analogous cases, and its own knowledge and experience in handling similar requests for fees."   *Id.*

The Plaintiffs offered no evidence or testimony regarding the reasonableness of counsels' hourly rate, nor did the Defendants offer testimony or evidence of rates charged in this jurisdiction to rebut the reasonableness of Mr. Atkinson's and Mr. Crosbie's hourly rates. The Court may take judicial notice of the hourly rates charged by attorneys representing debtors in consumer bankruptcy cases based on its own knowledge and experience in handling fee requests.   *Id.*   Based on this Court's knowledge and experience in handling fee requests, an hourly rate of $250-275 is not unreasonable or excessive within this jurisdiction for a case such as this.

6

Moreover, the Plaintiffs introduced testimony explaining the necessity of two attorneys. Mr. Atkinson, as the Plaintiffs' bankruptcy counsel prior to the filing of the adversary proceeding, was involved in the events surrounding the alleged stay violations and necessarily could have been called as a fact witness and in fact, was named by the Defendants as a fact witness. Because of Mr. Atkinson's role in the events leading up to the filing of the adversary proceeding, Mr. Crosbie was hired as co-counsel to represent the Plaintiffs' interests should a conflict preventing Mr. Atkinson from defending his clients and serving as a fact witness. Testimony also revealed the Plaintiffs were not charged in bringing Mr. Crosbie "up to speed" on the issues. Considering the circumstances, the Court does not find it unreasonable for the Plaintiffs to have co-counsel with similar rates representing them.

(2)    **Hours Billed**

As far as the hours expended prosecuting the adversary proceeding, Mr. Lu and Auto Barn primarily argue that none of the fees incurred are reasonable because the Plaintiffs and their counsel unnecessarily filed this adversary proceeding and failed to mitigate their damages. According to the Defendants, rather than address each of these violations by telephone calls and letters to Mr. Lu to resolve the dispute without court intervention, the Plaintiffs and their counsel deliberately goaded Mr. Lu and Auto Barn into committing stay violations for the purpose of filing an adversary proceeding in order to recover damages. The Defendants contend that for each violation complained of by the Plaintiffs, actions could and should have been taken that would have easily remedied the situation short of litigation.

This Court disagrees that the evidence supports any attempt to goad Mr. Lu or Auto Barn to commit stay violations. On the contrary, the evidence shows that no action by the Plaintiffs or their counsel provoked Mr. Lu to leave the threatening voicemail message on the Plaintiffs' voicemail. Moreover, it was Mr. Lu's choice to refuse to produce the original certificate of title on Auto Barn's behalf despite an assurance that the lien would be noted and to

7

threaten criminal prosecution if the Plaintiffs did not disclose the existence of insurance after the

car disappeared from the Plaintiffs' home.   The Court is not convinced by the Defendants'

arguments that Mr. Lu and Auto Barn are not responsible for their own actions nor does it find

Mr. Lu's self-serving testimony credible.

Further, the evidence shows that any attempt by the Plaintiffs or their counsel to resolve

the multiple willful stay violations committed by Mr. Lu and Auto Barn without the filing of the

adversary proceeding would not have been productive or effective.   The Defendants' actions

are nothing short of harassment of the Plaintiffs and the Plaintiffs and their counsel showed

restraint in waiting to file the adversary until the proverbial straw broke the camel's back.

Immediately upon the filing of the Plaintiffs' Chapter 13 bankruptcy, the Defendants

began their harassment of the Plaintiffs in the spring of 2009 and ultimately committed four stay

violations in a matter of five months in an effort to threaten and intimidate the Plaintiffs in

returning the Vehicle.   The Plaintiffs were subjected to two attempts at repossession of their

Vehicle as a result of the Defendants' actions.   Mr. Lu repeatedly threatened Mr. Henderson

with criminal prosecution on the Hendersons' voicemail and through the letter requesting

insurance proceeds.   Mr. Lu and Auto Barn continue to threaten Mr. Henderson with such

prosecution to this day, as evidenced by Mr. Lu's testimony at trial and two motions filed by Auto

Barn in the main case asking for relief from stay to criminally prosecute Mr. Henderson, filed in

January of 2011 [Docs. 126 & 131 of Case No.09-50596, hereinafter the "Main Case"].

In addition to the threats of criminal prosecution, Mr. Lu and Auto Barn created an

unnecessary roadblock by requiring the Plaintiffs to title their Vehicle in Kentucky with a copy of

the title rather than original, which will result in the Plaintiffs incurring additional fees in the

process.   The Defendants attempt to justify this roadblock by arguing that they were merely

attempting to protect Auto Barn's lien, but this argument is wholly without merit considering that

the letter informing Mr. Lu and Auto Barn of the need for the original certificate of title clearly

8

states that the lien shall be noted on the Kentucky title.   Only after two attempted repossessions, repeated threats of criminal prosecution, and interference in the titling of the Vehicle over a five month period did the Plaintiffs finally file this adversary proceeding in September of 2009.

Further, Mr. Lu and Auto Barn's counsel's actions over the course of this proceeding convince the Court that no attempts by Plaintiffs or their counsel to resolve this matter after the adversary proceeding was filed would have stopped the Defendants' actions.   Since the filing of the Complaint, the Defendants' counsel has taken a "scorch the earth" approach in defending this matter.   This adversary proceeding, which should have been a relatively simple proceeding to determine violations of the automatic stay, has resulted in over one hundred and seventy-five docket entries.   The Defendants have inundated the parties with lengthy and repetitive pleadings and discovery.   The Defendants filed no less than four motions for sanctions related to discovery disputes in the adversary proceeding [Docs. 70, 101, 105, 107, 111, and 112 of Adversary Case No. 10-2062], all of which the Court denied.

The Defendants have taken similar tactics in the Main Case.   Since the filing of Auto Barn's proof of claim [POC #18-1], the Defendants have filed multiple objections to the Chapter 13 plan [Docs. 47, 48, & 113] and the Plaintiffs' attempted modifications [Docs. 47, 48, & 113], a motion to strike the Plaintiffs' pleadings [Doc. 77], an additional motion for sanctions [Doc. 60], two motions to dismiss [Docs. 50 & 112], and two motions for relief from stay to criminally prosecute Mr. Henderson [Docs. 126 & 130].

The Defendants have also taken untenable positions, such as arguing in the adversary proceeding that Mr. Lu and Auto Barn's filing of the Third-Party Complaint [Doc. 35] seeking indemnity from Imperial, which was dismissed by this Court in its Memorandum Opinion [Doc. 155], is somehow the fault of the Plaintiffs for their failure to determine this Court lacks jurisdiction and their failure to move for dismissal of that Third-Party Complaint, despite the fact

9

that the Plaintiffs are not the named parties in the Third-Party Complaint.    While the Defendants

and Third-Party Plaintiffs are clearly the responsible parties for bringing the Third-Party

Complaint, Mr. Lu and Auto Barn point a finger at the other parties for failing to research and

raise an issue that the Defendants could and should have recognized on their own as easily as

any other party to this litigation.

Moreover, the Court has not failed to notice that Auto Barn's motions for relief from stay

to prosecute a criminal action against Mr. Henderson were filed in the Main Case on the eve of

the evidentiary hearing and almost two years from the date of the alleged criminal conduct.

Auto Barn filed these motions despite Mr. Lu's admission at trial that he has done nothing more

than research possible causes of action in the two years since Mr. Henderson allegedly

committed the crime.    Such litigation tactics and positions, taken as a whole, have exacerbated

the legal fees incurred and have led this Court to believe that no reasonable actions by the

Plaintiffs or their counsel could have resolved this dispute without this Court's intervention.

(3)    **Mitigation of Damages**

The Defendants argue that the Plaintiffs have a duty to mitigate their damages and any

attorneys' fees incurred after a reasonable settlement offer is made are not recoverable.    *See*

*In re Harris*, 374 B.R. 611, 616 (Bankr. N.D. Ohio 2007) (citing *In re Esposito*, 154 B.R. 1011,

1015-1016 Bankr. N.D. Ga. 1993).    In *Harris*, the debtor brought an adversary proceeding to

recover damages for a creditor's willful violation of the automatic stay in mailing account

statements to the Chapter 7 debtor after the creditor had been advised of the debtor's

bankruptcy filing.    The creditor sent two letters in violation of the automatic stay, but when

notified by counsel of this violation and a demand for $10,000 to settle the matter, the creditor

responded by indicating that no other notices would be sent and making a counter-offer of

$250.00.    The debtor rejected the counter-offer and demanded $5,000 to settle.    No further

communications were made.    *Id.* at 613-614.

The Defendants introduced evidence of attempts to settle by written settlement offers made on October 22, 2010 and January 18, 2011.   The Defendants attempted to settle in October of 2010 for $1,250, assignment of all rights to payment on its unsecured claim to the Plaintiffs, and dismissal of all claims made in the Third-Party Complaint.   This was rejected by the Plaintiffs.   The Defendants attempted to settle again on January 18, 2011, shortly before the evidentiary hearing.   The offer was for the same terms and was again rejected.   Considering the sheer amount of attorneys' fees incurred at the point the settlement offers were made and the nominal amount offered by the Defendants for repeated willful violations of the stay, the Court does not find that these offers were reasonable and therefore they do not preclude the recovery of attorneys' fees for the time spent prosecuting this adversary after the offers were made.

> (4)     **Absence of Other Damages**

Finally, the Defendants rely on *In re Harris* in arguing an award of the Plaintiffs' attorneys' fees is not appropriate where the Plaintiffs have incurred no other damages.   *In re Harris*, 374 B.R. at 616.   *In re Harris* is distinguishable.   The issue before the court in *Harris* was a single minor stay violation involving just two billing statements.   The court in *Harris* was not faced with repeated violations of the stay over a five month period, as is the case here.   Further, the court in *Harris* was troubled by the many hours spent by counsel that did not even appear at trial.   According to the *Harris* court, such action "takes on a real air of fee churning and attorney enrichment" by the debtor's counsel, neither of which is present here.   *Id.* at 617.

The Court has reviewed the itemized bills submitted by counsel and finds the time spent at the rates charged in prosecuting this matter is reasonable.   The Defendants' actions prior to and during this litigation lead this Court to believe that any attempt to resolve the violations outside of litigation would have been pointless.   A review of the record and the descriptions of the fees incurred convince the Court that reasonable steps were taken to both prosecute the

11

stay violations and to respond to the Defendants' litigation tactics and the Third-Party

Complaint, as well as mediation and settlement efforts by the parties, and in preparation for trial.

 For this reason, the Court shall award the Plaintiffs as actual damages for the repeated and

willful stay violations their total amount of attorneys' fees incurred in the amount of $40,047.50,

including the estimated fees in preparation for the hearing.

## C.   Punitive Damages

Finally, this Court has discretion pursuant to §362(k) to award punitive damages "in

appropriate circumstances."   Generally, punitive damages are awarded for a creditor's willful

stay violation only if the creditor's conduct is egregious, vindictive or intentionally malicious.

*See In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004).   Further, a high level of culpable

intent is not necessarily a pre-requisite to an award of punitive damages.   *Id.*   Even in the

absence of any overt wrongful intent, an award of punitive damages may still be appropriate for

a violation of the automatic stay "when there is a strong showing that the creditor acted in bad

faith or otherwise undertook their actions in reckless disregard of the law."   *Id.*

The Defendants' multiple violations of the stay were committed in total disregard to the

protections afforded to the Plaintiffs by the stay.   This isn't a situation involving a single minor

violation of the stay, but repeated willful violations and harassment over a period of months that

carries on to this day with continued threats of criminal prosecution.   Mr. Lu and Auto Barn's

actions go to the heart of the automatic stay - to prevent continued collection efforts,

harassment and intimidation of debtors by creditors.   This kind of behavior cannot and shall not

be tolerated.

The Defendants' attempts to explain and excuse Mr. Lu's behavior are disingenuous.

Mr. Lu and Auto Barn argue that actions taken in violation of the stay may be explained both by

Mr. Lu's initial *pro se* status and limited English speaking skills as well as his desire to protect

Auto Barn's security interest in accordance with Georgia law.   But the Defendants filed a proof

12

of claim for $8,400 with the assistance of counsel on July 8, 2009 [POC #18-1] and Mr. Lu has

been assisted by counsel throughout the bulk of this adversary proceeding.   Mr. Lu must bear

the brunt of any decision not to consult counsel in the months prior to the filing of the Complaint.

Further, the Court has listened to and weighed Mr. Lu's testimony, evaluated his credibility, and

does not believe Mr. Lu's claimed language barrier excuses his behavior.   Finally, the

Defendants' attempt to excuse their behavior because Mr. Lu was guided by an attempt to

protect Auto Barn's security interest rings hollow.   Auto Barn was listed as a secured creditor

in the bankruptcy petition, filed a proof of claim, and was receiving payments through the

Chapter 13 plan for a secured value of $6,500 at a 4.25% interest rate until conversion to a

Chapter 7.   Its lien was noted on the Georgia certificate of title and Mr. Lu was informed that

Auto Barn's lien would continue to be noted on any Kentucky certificate of title.   There is no

reason for the Defendants to believe that Auto Barn's security interest wasn't protected.

Finally, it has not escaped this Court's notice that Mr. Lu has taken no responsibility for

his actions.   While Mr. Lu apologized during the evidentiary hearing for his angry outburst that

resulted in the threatening voicemail message, this apology comes only after months of litigation

and is not credible where he takes no responsibility for the other violations of the stay.   Mr. Lu

and Auto Barn, as well as their counsel, have time and again placed the blame anywhere but

with Mr. Lu and Auto Barn, where it belongs.   In fact, the Defendants continue to argue that Mr.

Lu and Auto Barn are the victims.   This complete lack of timely or meaningful remorse, in

combination with the repeated harassment of the Plaintiffs by the Defendants and Mr. Lu's poor

excuses for his behavior, support a finding that punitive damages are appropriate.

Once an award of punitive damages is found to be appropriate, factors to be considered

in determining the amount of the award include, but are not limited to, the following: (1) the

nature of the creditor's conduct; (2) the nature and extent of harm to the debtor; (3) the

creditor's ability to pay; (4) the level of sophistication of the creditor; (5) the creditor's motives;

and (6) any provocation by the debtor.   *In re Bivens*, 324 B.R. at 44.   Considering the

Defendants' conduct previously described by the Court, the absence of any provocation by the

Plaintiffs, and the toll that this conduct has taken on the Plaintiffs as evidenced by the record

and the Plaintiffs' testimony at trial, the Court finds that the imposition of $25,000 in punitive

damages is appropriate.

**Conclusion**

In conformity with the Court's findings of fact and conclusions of law contained herein,

judgment shall be entered in favor of the Plaintiffs against the Defendants Paul Lu and Auto

Barn in the total amount of $65,047.50, representing $40,047.50 in attorneys' fees as actual

damages and $25,000.00 in punitive damages.   In reaching the conclusions found herein, the

Court has considered all of the evidence, exhibits, and arguments of counsel, regardless of

whether or not they are specifically referred to in this decision.   A separate order shall be

entered accordingly.


Copies to:

Ryan R. Atkinson, Esq.

Robert W. Edler, Esq.


14

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
**_Tracey N. Wise_**
**Bankruptcy Judge**
**Dated: Friday, May 13, 2011**
**(tnw)**